# EXHIBIT A



# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Sheryl Arneson<br>3M Company<br>3M Center<br>Bldg 220-9E-02 220-10W/F06<br>Saint Paul, MN 55144-1000 |
| **Electronic copy provided to:** | Gwen Bernardy-Bauer<br>Canhnha Luu |

| | |
|---|---|
| **Entity:** | 3M Company<br>Entity ID Number  3571748 |
| **Entity Served:** | 3M Company |
| **Title of Action:** | City of Downey vs. 3M Company (f/k/a Minnesota Mining and Manufacturing, Co.) |
| **Matter Name/ID:** | City of Downey vs. 3M Company (f/k/a Minnesota Mining and Manufacturing, Co.) (10909390) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Environmental |
| **Court/Agency:** | Los Angeles County Superior Court, CA |
| **Case/Reference No:** | 21STCV03250 |
| **Jurisdiction Served:** | Minnesota |
| **Date Served on CSC:** | 01/29/2021 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Celeste Evangelisti<br>214-521-3605 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

3M Company (f/k/a Minnesota Mining and Manufacturing, Co.); et al. J.B.
(Additional Parties Attachment form is attached.)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

City of Downey

| FOR COURT USE ONLY |
| --- |
| *(SOLO PARA USO DE LA CORTE)* |
| **CONFORMED COPY** |
| **ORIGINAL FILED** |
| Superior Court of California |
| County of Los Angeles |
| **JAN 27 2021** |
| Sherri R. Carter, Executive Officer/Clerk of Court |
| By: Tanya Herrera, Deputy |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: *(Número del Caso)* |
| --- | --- |
| *(El nombre y dirección de la corte es):* Superior Court of California | **21STCV03250** |
| County of Los Angeles   (Stanley Mosk Courthouse) | |
| 312 N. Spring Street, Los Angeles, CA  90012 | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Celeste Evangelisti, Baron & Budd, P.C., 3102 Oak Lawn Ave., Ste. 1100, Dallas, Texas  75219

| DATE: JAN 27 2021 | Clerk, by SHERRI R. CARTER | Tanya Herrera | , Deputy |
| --- | --- | --- | --- |
| *(Fecha)* | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.

2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☒ on behalf of *(specify):*     3M Company (f/k/a Minnesota Mining and Manufacturing, Co.)

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*

Page 1 of 1

| Form Adopted for Mandatory Use | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 |
| --- | --- | --- |
| Judicial Council of California | | *www.courts.ca.gov* |
| SUM-100 [Rev. July 1, 2009] | | |

SUM-200(A)

| SHORT TITLE:<br>City of Downey v. 3M Company; et al. | CASE NUMBER: |
|---|---|

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

E.I. DU PONT DE NEMOURS & COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; CHEMGUARD, INC.; TYCO FIRE  PRODUCTS, LP (successor in interest to the Ansul Company); KIDDE-FENWAL, INC.;  NATIONAL FOAM INC.; BUCKEYE FIRE EQUIPMENT COMPANY; AGC CHEMICALS AMERICAS, INC.; AGC, INC. f/k/a ASAHI GLASS CO., LTD; ARCHROMA MANAGEMENT, LLC; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMICALS INC.; CHUBB FIRE, LTD.; CLARIANT CORPORATION; CORTEVA, INC.; DEEPWATER CHEMICALS, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; KIDDE PLC., INC.; NATION FORD CHEMICAL COMPANY; RAYTHEON TECHNOLOGIES CORPORATION f/k/a UNITED TECHNOLOGIES CORPORATION; UTC FIRE & SECURITY AMERICAS CORPORATION, INC.;  ANGUS INTERNATIONAL SAFETY GROUP, LTD.; JOHNSON CONTROLS INTERNATIONAL PLC; JOHNSON CONTROLS FIRE PROTECTION, LP; CENTRAL SPRINKLER LLC; FIRE PRODUCTS GP HOLDING, LLC; and JOHN DOE DEFENDANTS 1-49

Page _____ of _____

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BARON & BUDD, P.C.**
John P. Fiske (CA Bar No. 249256)
11440 West Bernardo Court, Suite 265
San Diego, CA 92127
Telephone: (858) 251-7424

Celeste Evangelisti (CA Bar No. 225232)
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 521-3605

*Attorneys for Plaintiff City of Downey*

**CONFORMED COPY**
**ORIGINAL FILED**
Superior Court of California
County of Los Angeles

**JAN 27 2021**

Sherri R. Carter, Executive Officer/Clerk of Court
By: Tanya Herrera, Deputy

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| CITY OF DOWNEY,<br><br>    Plaintiff,<br><br>vs.<br><br>3M COMPANY (f/k/a Minnesota Mining and Manufacturing, Co.); E.I. DU PONT DE NEMOURS & COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; CHEMGUARD, INC.; TYCO FIRE PRODUCTS, LP (successor in interest to the Ansul Company); KIDDE-FENWAL, INC.; NATIONAL FOAM INC.; BUCKEYE FIRE EQUIPMENT COMPANY; AGC CHEMICALS AMERICAS, INC.; AGC, INC. f/k/a ASAHI GLASS CO., LTD; ARCHROMA MANAGEMENT, LLC; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMICALS INC.; CHUBB FIRE, LTD.; CLARIANT CORPORATION; CORTEVA, INC.; DEEPWATER CHEMICALS, INC.; DUPONT DE NEMOURS, INC.; DYNAX | Case No. **21 STCV03250**<br><br>Date Filed:<br><br>COMPLAINT FOR DAMAGES AND OTHER RELIEF:<br><br>(1) PUBLIC NUISANCE<br>(2) PRIVATE NUISANCE<br>(3) STRICT PROD. LIABILITY (DESIGN DEFECT – CONSUMER EXPECTATION TEST);<br>(4) STRICT PROD. LIABILITY (DESIGN DEFECT – RISK-BENEFIT TEST)<br>(5) STRICT PROD. LIABILITY (FAILURE TO WARN)<br>(6) NEGLIGENCE (MANUFACTURER OR SUPPLIES – DUTY TO WARN)<br>(7) NEGLIGENCE (FAILURE TO RECALL)<br>(8) TRESPASS |

1

CORPORATION; KIDDE PLC., INC.;                )        (9) CIVIL CONSPIRACY;
NATION FORD CHEMICAL COMPANY;                 )        (10) VIOLATION OF THE
RAYTHEON TECHNOLOGIES                         )              UNIFORM VOIDABLE
CORPORATION f/k/a UNITED                      )              TRANSFER ACT; and
TECHNOLOGIES CORPORATION; UTC                 )        (11) LIABILITY PURSUANT TO
FIRE & SECURITY AMERICAS                      )              CAL. CIV. CODE § 1882
CORPORATION, INC.;  ANGUS                     )
INTERNATIONAL SAFETY GROUP, LTD.;            )
JOHNSON CONTROLS INTERNATIONAL              )        **UNLIMITED CIVIL CASE**
PLC; JOHNSON CONTROLS FIRE                    )        **JURY TRIAL DEMANDED**
PROTECTION, LP; CENTRAL SPRINKLER            )
LLC; FIRE PRODUCTS GP HOLDING, LLC;          )        Exempt from Filing Fees (Govt. Code §
and JOHN DOE DEFENDANTS 1-49                  )        6103);
                                             )        Deemed Verified (Code Civ. Proc. § 446)
                Defendants.                   )

## COMPLAINT

Plaintiff, CITY OF DOWNEY ("Downey" or "Plaintiff"), by and, through its

undersigned counsel, brings this action against Defendants 3M Company, E. I. DuPont De

Nemours and Company, The Chemours Company, The Chemours Company FC, LLC,

Chemguard, Inc., Tyco Fire Products, LP (successor in interest to the Ansul Company), Kidde-

Fenwal, Inc., National Foam Inc., Angus Fire Armour Corporation, Buckeye Fire Equipment

Company, and  AGC Chemicals Americas, Inc., AGC, Inc. f/k/a Asahi Glass Co., Ltd.,

Archroma Management, LLC, Archroma U.S., Inc., Arkema Inc., BASF Corporation, Carrier

Global Corporation, ChemDesign Products, Inc., Chemicals Inc., Chubb Fire, Ltd., Clariant

Corporation, Corteva, Inc., Deepwater Chemicals, Inc., DuPont De Nemours, Inc.,  Dynax

Corporation, Kidde PLC., Inc., National Ford Chemical Company, Raytheon Technologies

Corporation f/k/a United Technologies Corporation, UTC Fire & Security Americas Corporation,

Inc.  Angus International Safety Group, LTD., Johnson Controls International plc, Johnson

Controls Fire Protection, LP, Central Sprinkler LLC, Fire Products GP Holding, LLC,  John Doe

Defendants 1-49 (collectively, "Defendants"), and alleges as follows:

2

COMPLAINT FOR DAMAGES AND OTHER RELIEF

## I.      SUMMARY OF THE CASE

1.      Plaintiff brings this action against Defendants to recover any and all past and future compensatory and/or consequential damages for the investigation, remediation, removal, disposal, and monitoring of the ongoing impacts to its surface, groundwater, soil, and sediment caused and/or created by Defendants' products, as well as any and all punitive damages available as a result of the actions and/or inactions of Defendants.

2.      Downey supplies drinking water to over a hundred thousand individuals in the Downey area.  Plaintiff owns and/or operates drinking water wells that supply water to residences, schools, and businesses.

3.      Per- and polyfluoroalkyl substances ("PFAS") including, but not limited to, perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic acid ("PFOS") have been detected in Downey's groundwater supply.  Downey seeks to recover by this action the substantial costs necessary to ensure a safe and reliable drinking water supply from wells that have been, and continue to be, impacted by PFAS including but not limited to PFOA and/or PFOS

4.      At various times from the 1960s through today, Defendants manufactured, marketed, and/or sold PFAS including but not limited to PFOA and/or PFOS and/or the precursors to PFOS and PFOA or products made with those constituents including Teflon, Scotchguard, waterproofing compounds, stain proofing compounds, paper and cloth coatings, waxes, and various other products.  One such product is aqueous film-forming foam ("AFFF"), a firefighting agent used to control and extinguish Class B fuel fires.

5.      Defendants' AFFF contained per- and polyfluoroalkyl substances ("PFAS"), specifically, perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic acid ("PFOS"), and/or contained the precursors of PFOA and PFOS.  Any and all references to PFOA and PFOS in this Complaint should be read to reference and include the precursors to PFOA and PFOS.

3

6.     PFOA and PFOS are manufactured compounds that are toxic and persistent in the environment, do not biodegrade, move readily through soil and groundwater, and pose a concern to human health and safety.

7.     Defendants manufactured, marketed and/or sold PFOA and/or PFOS with the knowledge that these toxic compounds would be released into the environment during the intended use of products made with PFOA and/or PFOS even when the PFOA and/or PFOS and end products were used as directed and intended by the manufacturer. At all relevant times, upon information and belief, beginning decades ago and continuing to this date, products containing PFAS including but not limited to PFOA and/or PFOS were sold, supplied, used, and disposed in the vicinity of Downey wells and water supplies.  During these activities, PFAS-containing products were used as directed and intended by the manufacturers, which allowed PFAS, including but not limited to PFOA and/or PFOS to enter the environment.  When used and disposed as intended, these compounds migrated through the soil and into the groundwater, thereby impacting Plaintiff's water supply.

8.     Defendants manufactured, marketed and/or sold AFFF with the knowledge that these toxic compounds would be released into the environment during fire protection, training, and response activities even when the AFFF was used as directed and intended by the manufacturer.

9.     At all relevant times, upon information and belief, beginning decades ago, continuing to this date, AFFF containing PFOS and/or PFOA has been used and stored at fire training facilities, airports, and military bases for fire protection, training, and response activities. During these activities, AFFF was used as directed and intended by the manufacturers, which allowed PFOA and/or PFOS to enter the environment.  When sprayed onto outdoor surfaces as intended, these compounds migrated through the soil and into the groundwater, thereby impacting Plaintiff's water supply.

4

10.     As a result of the use of products containing PFAS, including but not limited to PFOA and/or PFOS, including AFFF and others, for their intended purposes, Downey has detected at least 8 discrete PFAS chemicals, including PFOS and PFOA, in its water supply and wells at elevated levels.

11.     Plaintiff files this lawsuit to recover compensatory and all other damages, including but not limited to the costs of designing, constructing, installing, operating and maintaining the treatment facilities and equipment required to remove PFOA and/or PFOS from the drinking water supplied to the public and/or for the costs of securing alternative sources of water as a result of the ongoing and future impacts set forth and described herein, and to ensure that the responsible parties bear such expense, rather than Downey and its ratepayers.

## II.     PARTIES

12.     The City of Downey is a California municipal corporation and charter city operating a water utility incorporated under the laws of the State of California with its principal place of business in Downey, California. Downey owns and operates public drinking water wells that provide potable drinking water to Downey's population.  Their system is subject to the rules and regulations of the State Water Resources Control Board Division of Drinking Water ("SWRCB DDW"), and Downey has a water supply permit pursuant to which Downey has a duty to provide water service.

13.     Downey's water system includes, among other elements, drinking water production wells that draw from groundwater aquifers and associated pumping, storage, and distribution facilities and equipment, all of which will be referred to collectively in this Complaint as "the Downey Wells." Among other things, the Downey Wells include the right of Downey to appropriate and use groundwater for drinking water supplies from such Wells.

14.     Downey has significant property interests in the waters it appropriates and uses from the Downey Wells, and also has significant property interests in the groundwaters that supply the Downey Wells. The past, present and continuing impact to such waters by PFOA

COMPLAINT FOR DAMAGES AND OTHER RELIEF

and/or PFOS constitutes injury to such waters for which Downey is entitled to, and hereby does, seek damages and other appropriate relief.  All of Downey's affected property interests, including the Downey Wells, will be referred to collectively in this Complaint as "Downey Property" or "Plaintiff's Property."

15.     The following Defendants designed, manufactured, formulated, marketed, promoted, distributed, sold (directly or indirectly), applied, discharged, disposed of and/or released the PFAS, including but not limited to PFOA and/or PFOS and/or products containing PFAS including but not limited to PFOA and/or PFOS that have impacted the Downey Wells and water supply:

   a. Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of the State of Delaware and authorized to conduct business in California, with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. At all times relevant, 3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country.

   b. 3M is the only company that manufactured and/or sold AFFF containing PFOS.

   c. Defendant E. I. DuPont De Nemours and Company ("DuPont") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.  DuPont does and/or has done business throughout the United States, including in the state of California.

   d. Defendant The Chemours Company ("Chemours") is a corporation organized and existing under the laws of the State of Delaware, with its principal place

COMPLAINT FOR DAMAGES AND OTHER RELIEF

of business located at 1007 Market Street, Wilmington, Delaware 19899. Chemours does business throughout the United States, including conducting business in California.

e.  In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of PFOA and/or PFOS compounds and products that contain PFOA and/or PFOS.

f.  Defendant The Chemours Company FC, LLC ("Chemours FC"), successor in interest to DuPont Chemical Solutions Enterprise, is a Delaware Corporation. Upon information and belief, Chemours FC conducts business throughout the United States, including the State of California.  Its principal place of business is 1007 Market Street Wilmington, Delaware, 19899.

g.  Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Texas, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. Chemguard does business throughout the United States. Upon information and belief, Chemguard does and/or has done business throughout the United States, including in the state of California.  This Defendant manufactured and sold AFFF that contained PFOA.

h.  Defendant Tyco Fire Products LP (successor in interest to the Ansul Company) ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware and authorized to do business in California, with its principal place of business located at 1400 Pennbrook Parkway, Lansdale,

7

Pennsylvania 19446. Tyco is an indirect subsidiary that is wholly owned by Johnson Controls International plc, an Irish public limited company listed on the New York Stock Exchange [NYSE: JCI].

i.  Tyco manufactures the Ansul brand of products and is the successor-in-interest to the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco/Ansul"). At all times relevant, Tyco/Ansul manufactured, marketed, promoted, distributed, and/or sold fire suppression products, including AFFF, that contained fluorocarbon surfactants containing PFOA and/or PFOS.

j.  Defendant The Ansul Company (hereinafter "Ansul") is a Wisconsin corporation, with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

k.  Defendant Kidde-Fenwal, Inc. ("Kidde-Fenwal") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at One Financial Plaza, Hartford, Connecticut 06101. Kidde-Fenwal is the successor-in-interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam System, Inc.) (collectively, "Kidde/Kidde Fire"). Kidde-Fenwal does business throughout the United States, including conducting business in California.

l.  Defendant National Foam Inc. ("National Foam") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501. National Foam manufactures the Angus brand of products and is the successor-in-interest to Angus Fire Armour Corporation (collectively, "National Foam/Angus Fire"). Upon information and belief, National Foam/Angus Fire does and/or has done

8

business throughout the United States, including in the state of California. This Defendant manufactured and sold AFFF that contained PFOA.

m. Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. Buckeye does and/or has done business throughout the United States, including conducting business in California. This Defendant manufactured and sold AFFF that contained PFOA.

n. Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation organized under the laws of Japan and does business throughout the United States. AGC has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

o. Defendant AGC Chemicals Americas, Inc. ("AGC America") is a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd. AGC America is registered to do business in California.

p. Defendant Archroma Management, LLC, is a foreign limited liability company registered in Switzerland, with a principal business address of Neuhofstrasse 11, 4153 Reinach, Basel-Land, Switzerland.

q. Defendant Archroma U.S., Inc. is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF. Archroma U.S., Inc. is registered to do business in California.

9

r.  Defendant Arkema Inc. ("Arkema") is a Pennsylvania corporation with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema is registered to do business in California.

s.  Defendant BASF Corporation ("BASF") is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932.  Upon information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals.  BASF is registered to do business in California.  Upon information and belief, Ciba-Geigy Corporation and/or Ciba Specialty Chemicals does and/or has done business throughout the United States, including California.

t.  Defendant Carrier Global Corporation is a Delaware corporation with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.  Upon information and belief, Carrier Global Corporation does and/or has done business throughout the United States. Carrier Global Corporation is registered to do business in California.

u.  Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.

v.  Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205.  Clariant is registered to do business in California.

w.  Defendant Chemicals Inc. ("Chem Inc.") is a Texas corporation with its principal place of business located at 12321 Hatcherville Road, Baytown, Texas 77521. Chem Inc. is registered to do business in California.

x.  Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices in Littleton Road, Ashford, Middlesex, United

10

COMPLAINT FOR DAMAGES AND OTHER RELIEF

Kingdom TW15 1TZ.  Upon information and belief, Chubb is or has been
composed of different subsidiaries and/or divisions, including but not
limited to Chubb Fire & Security, Ltd., Chubb Security, PLC, Red Hawk
Fire & Security, LLC, and/or Chubb National Foam, Inc.

y.   Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation
with its principal place of business located at 196122 E County Road 40,
Woodward, Oklahoma 73801.

z.   Defendant Dynax Corporation ("Dynax") is a Delaware corporation with its
principal place of business located at 103 Fairview Park Drive, Elmsford, New
York 10523. Upon information and belief, this Defendant manufactured
Fluorosurfactant Products for use in AFFF.

aa.  Defendant Corteva, Inc. is a Delaware corporation with its principal place of
business located at 974 Centre Road, Wilmington, Delaware 19805. Upon
information and belief, Corteva, Inc. is one of the aforementioned spin-off
companies from DowDuPont, Inc., and is believed to have assumed some of
the PFOA and/or PFOS liabilities of the former DuPont. Corteva, Inc. is
registered to do business in California.

bb.  Defendant DuPont de Nemours, Inc. is a Delaware corporation with its principal
place of business located at 974 Centre Road, Building 730, Wilmington,
Delaware 19805.  Upon information and belief, DowDuPont, Inc. was formed
in 2017 as a result of the merger of Dow Chemical and DuPont. DowDuPont,
Inc. was subsequently divided into three publicly traded companies and on June
1, 2019, DowDuPont, Inc. changed its registered name to DuPont de Nemours,
Inc. ("New DuPont").

11

COMPLAINT FOR DAMAGES AND OTHER RELIEF

cc. Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina corporation with its headquarters located at 2300 Banks Street, Fort Mill, South Carolina 29715.

dd. Defendant Kidde PLC, Inc. is a Delaware corporation with its principal place of business located at 9 Farm Springs Road, Farmington, Connecticut 06032. Kidde PLC, Inc. is part of UTC Climate, Controls & Security, a unit of United Technologies Corporation. Upon information and belief, Kidde PLC, Inc. does and/or has done business throughout the United States, including in the State of California.

ee. Defendant UTC Fire & Security Americas Corporation, Inc. ("UTC") is a Delaware corporation with its principal place of business at 13995 Pasteur Blvd., Palm Beach Gardens, Florida 33418.  UTC is registered to do business in California.

ff. Defendant Raytheon Technologies Corporation (f/k/a United Technologies Corporation) ("Raytheon Tech f/k/a United Tech") is a Delaware corporation with its principal place of business at 10 Farm Springs Road, Farmington, Connecticut 06032. Raytheon Tech f/k/a United Tech is registered to do business in California.

gg. Defendant Angus International Safety Group, Ltd. ("AISG") is a foreign private limited company, United Kingdom registration number 8441763, with offices at Station Road, High Bentham, Near Lancaster, United Kingdom LA2 7NA. Upon information and belief, Angus was formed when Angus Fire Armour Corporation and National Foam, Inc. separated from United Technologies Corporation in or around 2013.

hh. Defendant Johnson Controls International plc ("JCI plc") is an Irish public limited company with its principal place of business located at One Albert Quay, Cork, Ireland T12 X8N6.

ii. Defendant, Johnson Controls Fire Protection, LP is a Delaware limited partnership with its principal place of business located at 6600 Congress Avenue, Boca Raton, Florida 33487.

jj. Defendant Central Sprinkler LLC is a Delaware limited liability company with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446. Upon information and belief, this Defendant is a limited partner of Tyco. Upon information and belief, Chemguard, Inc. is wholly owned by Central Sprinkler LLC.

kk. Defendant Fire Products GP Holding, LLC is a Delaware limited liability company with its principal place of business located at 9 Roszel Road, Princeton, New Jersey 08540. This Defendant is registered to do business in Florida. Upon information and belief, this Defendant is a general partner of Tyco.

ll. Upon information and belief, Defendants John Doe 1-49 were manufacturers and/or sellers of PFAS and/or PFAS-containing products including AFFF. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time Plaintiff will move for leave of this Court to add those individuals' actual names to the Complaint as Defendants.

16.    The foregoing Defendants, including the John Doe Defendants, all were manufacturers and/or or sellers of PFAS including but not limited to PFOA and/or PFOS and/or products containing PFAS including but not limited to PFOA and/or PFOS including AFFF who, on information and belief, manufactured, distributed, and/or sold PFAS including but not limited

13

to PFOA and/or PFOS and/or products containing PFAS including but not limited to PFOA and/or PFOS including AFFF. that was used on the Plaintiff's Property.

17. When the term "Defendants" is used alone, it refers to all Defendants named in this Complaint jointly and severally. Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

### III. JURISDICTION AND VENUE

18. The California Superior Court has jurisdiction over this action pursuant to California Constitution Article VI, Section 10, which grants the Superior Court "original jurisdiction in all cases except those given by statute to other trial courts." The statutes under which this action is brought do not grant jurisdiction to any other trial court.

19. This Court has jurisdiction over Defendants because, based on information and belief, each is a corporation or other business that has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market either through the distribution or sale of products containing PFAS including but not limited to PFOA and/or PFOS in the State of California or by having a manufacturing, distribution or other facility located in California so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

20. Venue is proper in Los Angeles Superior Court because the real property subject of the action is located in Los Angeles County.

14

## IV.   ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

**A.   THE CONTAMINANTS: PFOA & PFOS**

21.    PFOA and PFOS are two chemicals within a class known as perfluoroalkyl acids ("PFAAs").  PFAAs are part of a larger chemical family known as per- and polyfluoroalkyl substances ("PFAS").  PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group.  The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature which is why these molecules are so persistent and bioaccumulate.

22.    PFAAs are sometimes described as long-chain and short-chain, depending on the number of carbon atoms contained in the carbon chain.  PFOA and PFOS are considered long-chain PFAAs because they each have eight carbon atoms in their chains.

23.    PFOA and PFOS do not occur in nature.  Rather, they are stable, man-made chemicals.  They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation.  Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

24.    PFOA and PFOS are readily absorbed in animal and human tissues by way of oral exposure and accumulate in the serum, kidney, and liver.  They have been found globally in water, soil, and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[1]

PFOA and PFOS are persistent in the human body and resistant to metabolic degradation.  Since they were first produced, information has emerged showing negative health effects caused by PFOA and PFOS.

_____

[1] *See* Agency for Toxic Substances and Disease Registry, Per- and Polyfluoroalkyl Substances and Your Health, available at https://www.atsdr.cdc.gov/pfc/health_effects_pfcs.html.

COMPLAINT FOR DAMAGES AND OTHER RELIEF

25.     The EPA has noted that "drinking water can be an additional source [of PFOA and/or PFOS in the body] in the small percentage of communities where these chemicals have contaminated water supplies."  In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example [...] an airfield at which [PFOA and/or PFOS] were used for firefighting."[2]

26.     No federal or state agency has approved PFOA and/or PFOS as an additive to drinking water. No federal or state agency has approved releasing or discharging PFOA and/or PFOS to groundwater.

27.     The SWRCB DDW has established "Notification Levels" at concentrations of 6.5 parts per trillion ("ppt") for PFOS and 5.1 ppt for PFOA.  A Notification Level is a health-based advisory level established for chemicals in drinking water that do not have established maximum contaminant levels.  When a Notification Level is exceeded, the water supplier must provide notice to its governing body.  DDW has also established a single "Response Level" of 40 ppt for PFOS and 10 ppt for PFOA.  When possible, DDW recommends removing the source from service or providing treatment when the concentration exceeds the Response Level.

28.     PFOS and/or PFOA are primary members of the PFAS chemical family and primary components of the AFFF made by defendants for decades.

## B.     THE PRODUCT: PFAS-CONTAINING PRODUCTS

29.     PFAS are used to make a variety of consumer and industrial goods sold, supplied, used, and disposed of in the State of California.

30.     PFAS are used, for example, in nonstick cookware, waterproofing waxes, stain-preventing coatings, and aqueous film-forming foams ("AFFF") used for firefighting.

31.     When used as intended, PFAS escape these products and enter into the environment.

---

[2] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

16

32.     Once PFAS, including PFOA and PFOS, are free in the environment they do not hydrolyze, photolyze, or biodegrade under typical environmental conditions, and they are extremely persistent in the environment.  As a result of their persistence, they are widely distributed throughout soil, air, and groundwater.

33.     The use of PFAS-containing products as directed and intended by the manufacturers allowed PFOA and/or PFOS to enter into and onto Plaintiff's Property where these compounds migrated through the subsurface and into the groundwater, thereby impacting and/or potentially impacting the surface, soil, sediment, and groundwater, as well as causing and/or potentially causing other extensive and ongoing damage to Plaintiff's Property.

34.     Due to the chemicals' persistent nature, among other things, these chemicals have, and continue to, cause impact, injury, and damage to Plaintiff's Property.

**C.     THE PRODUCT: AQUEOUS FILM-FORMING FOAM**

35.     AFFF is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

36.     The AFFF made by Defendants contained either or both PFOA and PFOS.

37.     The AFFF produced, marketed, and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS.  All other Defendants used telomerization to produce AFFF.  Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

38.     AFFF can be made without PFOA and PFOS.  Fluorine-free foams do not release PFOA and/or PFOS into the environment.  Despite knowledge of this fact as well as knowledge of the toxic nature of AFFF made with PFOA and/or PFOS, defendants continued to manufacture, distribute and/or sell AFFF with PFOA and/or PFOS which led to the ongoing impacts and damages to Plaintiff's Property.

17

COMPLAINT FOR DAMAGES AND OTHER RELIEF

39.     AFFF is used to extinguish fires, particularly fires that involve petroleum or other flammable liquids.  AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

40.     When used as the Defendants intended and directed, AFFF releases PFOA and/or PFOS into the environment.

41.     Once PFOA and/or PFOS are free in the environment they do not hydrolyze, photolyze, or biodegrade under typical environmental conditions, and they are extremely persistent in the environment.  As a result of their persistence, they are widely distributed throughout soil, air, and groundwater.

42.     Defendants' AFFF containing PFOS and/or PFOA has been used for its intended purpose in the process of fire protection, training, and response activities for many years.  During these activities, AFFF was used as directed and intended by the manufacturer, which, upon information and belief, allowed PFOA and/or PFOS to enter into and onto Plaintiff's Property where these compounds migrated through the subsurface and into the groundwater, thereby impacting the surface, soil, sediment, and groundwater, as well as causing other extensive and ongoing damages.

43.     Due to the chemicals' persistent nature, among other things, these chemicals have, and continue to, cause injury and damage to Plaintiff's Property.

## C.     DEFENDANTS' KNOWLEDGE OF PFOA AND PFOS HAZARDS

44.     On information and belief, by the 1970s, Defendants knew, or reasonably should have known, among other things, that: (a) PFAS including but not limited to PFOA and PFOS are toxic; and (b) when allowed to escape into the open environment per the instructions given by the manufacturer, PFAS including but not limited to PFOA and PFOS migrate through the subsurface, mix easily with groundwater, resist natural degradation, and can be removed from public drinking water supplies only at substantial expense.

18

45.     In 1980, 3M published data in peer reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.[3]

46.     By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects.

47.     Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned, "we must view this present trend with serious concern. It is certainly possible that [...] exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[4]

48.     Notwithstanding their respective knowledge of the dangers of AFFF made with PFOA and/or PFOS, Defendants negligently and carelessly: (1) designed, manufactured, marketed, and/or sold products containing PFOA and/or PFOS, including AFFF; (2) failed to warn users of PFAS-containing products about the presence of, and emission of, PFOA and PFOS from those products; (3) issued instructions on how AFFF should be used and disposed of (namely, by washing the foam into the soil), thus improperly permitting PFOA and/or PFOS to contaminate the soil and groundwater; (4) failed to recall and/or warn users of products containing PFOA and/or PFOS, including AFFF, of the dangers of soil and groundwater contamination as a result of the standard use and disposal of these products; (5) negligently designed products containing or degrading into PFOA and/or PFOS; and, (6) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the AFFF containing PFOA and/or PFOS.

---

[3] *See* Letter from 3M to Office of Pollution Prevention and Toxics, EPA titled "TSCA 8e Supplemental Submission, Docket Nos. 8EHQ-0373/0374 New Data on Half Life of Perfluorochemicals in Serum," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.
[4] *See* Memorandum "Organic Fluorine Levels," August 31, 1984, available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

COMPLAINT FOR DAMAGES AND OTHER RELIEF

49.     As a direct result of Defendants' acts as alleged in this Complaint, Plaintiff's Property has been impacted and will continue to be impacted by PFAS including but not limited to PFOA and/or PFOS. As a result, Plaintiff will be required to  assess, evaluate, investigate, monitor, remove, clean up, correct, and/or remediate the PFAS including but not limited to PFOA and/or PFOS on its property at significant expense.

50.     Defendants had and breached their duty to evaluate and test such products adequately and thoroughly to determine their environmental fate and transport characteristics and potential human health and environmental impacts before they sold such products.  They also had and breached their duty to minimize the environmental harm caused by PFAS including but not limited to PFOA and/or PFOS. Moreover, defendants failed to warn Plaintiff of the known risks for environmental and health hazards arising from using products containing PFAS including but not limited to PFOA and/or PFOS, including AFFF, in their intended manner for their intended purposes.

**D.      THE IMPACT OF PFOA AND PFOS ON PLAINTIFF'S PROPERTY**

51.     PFAS, including but not limited to PFOA and PFOS, have been detected in varying amounts, at varying times in Downey Wells.

52.     Plaintiff contends that any detectible level of PFAS including but not limited to PFOA and/or PFOS in its soil, surface water, groundwater, well water, or elsewhere on its property requires investigation, remediation, and monitoring.

53.     The detection and/or presence of PFAS including PFOA and PFOS and the threat of further detection and/or presence of these constituents, in the Downey Wells in varying amounts and at varying times has resulted, and will continue to result, in injuries and damage to Plaintiff.

54.     Upon information and belief, the invasion of Plaintiff's Property with PFAS including but not limited to PFOA and/or PFOS is recurring—new PFAS constituents flow

COMPLAINT FOR DAMAGES AND OTHER RELIEF

regularly and constantly through the groundwater and into Plaintiff's Property each day, resulting in new harm to the property and Plaintiff on each occasion.

55.     The injuries to Plaintiff caused by Defendants' conduct constitute an unreasonable interference with, and damage to, the Plaintiff's Property. Plaintiff's interests in protecting its property constitute a reason for seeking damages sufficient to restore such property to its condition before PFOS and/or PFOA exposure.

## FIRST CAUSE OF ACTION
## PUBLIC NUISANCE

56.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

57.     Defendants manufactured, distributed, marketed, and promoted products containing PFAS including but not limited to PFOA and/or PFOS, including AFFF, in a manner that created or participated in creating a public nuisance that is harmful to health and obstructs the free use of Downey Property.

58.     Upon information and belief, the presence of PFAS including but not limited to PFOA and/or PFOS has interfered and/or has the potential to interfere with the use of Downey Property as a source of drinking water supply.

59.     The presence of PFAS including but not limited to PFOA and/or PFOS has and will cause costs, inconvenience, and annoyance to Plaintiff, who is charged with supplying potable drinking water to residents and businesses in Downey, California.

60.     The condition affects a substantial number of people who rely upon Downey water for commercial and recreational purposes and interferes with the rights of the public at large to a clean and reliable drinking water resource and environment.

61.     An ordinary person would be reasonably annoyed or disturbed by the presence in public drinking water of PFAS including but not limited to PFOA and/or PFOS that have the potential to degrade water quality.

21

COMPLAINT FOR DAMAGES AND OTHER RELIEF

62.     The seriousness of the environmental and human health risk far outweighs any social utility of Defendants' conduct in manufacturing PFAS including but not limited to PFOA and/or PFOS and products containing PFAS including but not limited to PFOA and/or PFOS and concealing the impacts posed to human health and the environment.

63.     Downey has suffered damages and will continue to suffer harm that is different from the type of harm suffered by the general public, and Plaintiff will incur substantial costs to remove the stated constituents from its water supply.

64.     Plaintiff did not consent to the conduct that resulted in the presence of PFAS including but not limited to PFOA and/or PFOS in Downey Wells and on Downey Property.

65.     Defendants' conduct was a substantial factor in causing the harm to Plaintiff.

66.     Defendants knew or, in the exercise of reasonable care, should have known that the manufacture and sale of products containing PFAS including but not limited to PFOA and/or PFOS was causing the type of adverse impacts now affecting the Downey Wells.  Defendants knew that these constituents would migrate into water supplies and are associated with negative health impacts to humans. Defendants thus knew, or should have known, that the presence of PFAS including but not limited to PFOA and/or PFOS would seriously and unreasonably interfere with the ordinary comfort, use, and enjoyment of public water supply wells.

67.     As a direct and proximate result of Defendants' creation of a public nuisance, Plaintiff has suffered, and continues to suffer, monetary damages to be proven at trial, all of which are set forth and prayed for herein below.

68.     Defendants' conduct was malicious, oppressive, wanton, willful, intentional, and shocks the conscience, warranting punitive and exemplary damages, because they manufactured, promoted, sold, products containing PFAS including but not limited to PFOA and/or PFOS, including AFFF, knowing that these products would release constituents that are toxic, cannot be contained, and last for centuries.

22

COMPLAINT FOR DAMAGES AND OTHER RELIEF

## SECOND CAUSE OF ACTION

## PRIVATE NUISANCE

69.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

70.     Plaintiff's Property has been impacted by PFAS including but not limited to PFOA and/or PFOS as a direct and proximate result of the acts and omissions of Defendants as set forth above.

71.     PFAS including but not limited to PFOA and/or PFOS impacts caused by Defendants' conduct has damaged Plaintiff's Property and interfered with and/or will interfere with the ordinary safety, use, benefit, and enjoyment of Plaintiff's property.

72.     As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has suffered, and continues to suffer, monetary damages to be proven at trial, all of which are set forth and prayed for herein below.

## THIRD CAUSE OF ACTION

## STRICT LIABILITY- DESIGN DEFECT- CONSUMER EXPECTATION TEST

73.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

74.     Downey was harmed by products containing PFAS including but not limited to PFOA and/or PFOS, including AFFF, which were designed, manufactured, sold, and distributed by Defendants, and which were defectively designed, did not include sufficient instructions, and did not include sufficient warning of potential safety hazards.

75.     The design of Defendants' products containing PFAS including but not limited to PFOA and/or PFOS was defective because these products did not perform as safely as an ordinary consumer would have expected them to perform.

23

76.     Defendants' products containing PFAS including but not limited to PFOA and/or PFOS did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way.

77.     Downey was, is and will be harmed by Defendants' products containing PFAS including but not limited to PFOA and/or PFOS, including AFFF.

78.     The failure to perform safely of Defendants' products containing PFAS, including AFFF, was a substantial factor in causing Downey's harm.

79.     Defendants had actual knowledge that Defendants' products containing PFAS including but not limited to PFOA and/or PFOS, including AFFF, were causing the type of harm suffered by Downey.  Defendants also knew or should have known that these products caused harm even when used as intended, instructed, and normally expected and that no third-party could prevent such harm.

80.     Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

81.     Defendants, their officers, directors, and managing agents, engaged in despicable conduct and acted or failed to act with malice, oppression, and fraud, warranting punitive or exemplary damages. As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has suffered, and continues to suffer, monetary damages to be proven at trial, all of which are set forth and prayed for herein below.

## FOURTH CAUSE OF ACTION

## STRICT LIABILITY- DESIGN DEFECT- RISK-BENEFIT TEST

82.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

COMPLAINT FOR DAMAGES AND OTHER RELIEF

83.     Downey was harmed by PFAS including but not limited to PFOA and/or PFOS, and products containing PFOA and/or PFOS that Defendants designed, manufactured, sold, and distributed.

84.     The design of Defendants' products containing PFAS including but not limited to PFOA and/or PFOS caused harm to Downey.

85.     The design of Defendants' products containing PFAS including but not limited to PFOA and/or PFOS was a substantial factor in causing harm to Downey.

86.     The gravity of the significant environmental harm resulting from the use of Defendants' products containing was, is, and will be substantial because PFAS impacts, including those of PFOA and/or PFOS are widespread, persistent, and toxic.

87.     The likelihood that this harm would occur was, is, and will be very high because Defendants knew and/or should have known that Defendants' products containing PFAS including but not limited to PFOA and/or PFOS were toxic, could not be contained, and do not readily degrade in the environment.

88.     At the time of manufacture, there were alternative safer designs that were feasible, cost effective, and advantageous, including not using PFOA and/or PFOS in products.

89.     Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

90.     Defendants, their officers, directors, and managing agents, engaged in despicable conduct, and acted or failed to act with malice, oppression, and fraud, warranting punitive or exemplary damages.

91. As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has suffered, and continues to suffer, monetary damages to be proven at trial, all of which are set forth and prayed for herein below.

## FIFTH CAUSE OF ACTION

## STRICT LIABILITY- FAILURE TO WARN

92.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

93.     Downey was harmed by PFAS including but not limited to PFOA and PFOS, including that in AFFF and other PFAS-containing products that Defendants designed, manufactured, sold, and distributed.

94.     Defendants' products containing PFAS including but not limited to PFOA and/or PFOS were designed, manufactured, sold, and distributed without adequate warning of toxicity, potential human health risks, and environmental hazards.

95.     Defendants' products containing PFAS including but not limited to PFOA and/or PFOS were designed, manufactured, sold, and distributed without instructions to prevent contamination of soil and water and the resulting potential human health risks and environmental hazards.

96.     The potential environmental risks of Defendants' products containing PFAS including but not limited to PFOA and/or PFOS were known and/or knowable in light of the scientific and medical knowledge that was generally accepted in the scientific community and/or in light of Defendants' superior knowledge about their products at the time of design, manufacture, sale, and distribution.

97.     The potential environmental risks presented a substantial danger when Defendants' products containing PFAS including but not limited to PFOA and/or PFOS were and are used or misused in an intended or reasonably foreseeable way.

98.     Ordinary consumers and third parties would not have recognized the potential risks.

99. Defendants failed to adequately warn or instruct of the potential risks.

100.     Downey was, is, and will be harmed.

101.   The lack of sufficient instructions or warnings was a substantial factor in causing Downey's harm.

102.   Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

103.   Defendants, their officers, directors, and managing agents, engaged in despicable conduct, and acted or failed to act with malice, oppression, and fraud, warranting punitive or exemplary damages.

104.   As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has suffered, and continues to suffer, monetary damages to be proven at trial, all of which are set forth and prayed for herein below.

## SIXTH CAUSE OF ACTION

## NEGLIGENCE- MANUFACTURER OR SUPPLIER- DUTY TO WARN

105.   Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

106.   Defendants designed, manufactured, sold, and distributed products containing PFAS including but not limited to PFOA and/or PFOS.

107.   Defendants' products containing PFAS including but not limited to PFOA and/or PFOS were designed, manufactured, sold, and distributed without adequate warning of toxicity, potential human health risks, and environmental hazards.

108.   Defendants' products containing PFAS including but not limited to PFOA and/or PFOS were designed, manufactured, sold, and distributed without instructions to prevent contamination of soil and water and the resulting potential human health risks and environmental hazards.

109.   Defendants were negligent by not using reasonable care to warn or instruct about the risks associated with products containing PFAS including but not limited to PFOA and/or PFOS.

110.   Defendants knew or reasonably should have known that their products containing PFAS including but not limited to PFOA and/or PFOS were dangerous or likely to be dangerous when used or misused in a reasonably foreseeable manner.

111.   Defendants knew or reasonably should have known that users and third parties would not realize the danger.

112.   Defendants failed to adequately warn of the danger or instruct on the safe use of products containing PFAS including but not limited to PFOA and/or PFOS.

113.   A reasonable chemical manufacturer, seller, distributor, under the same or similar circumstances would have warned of the danger or instructed on the safe use of products containing PFOA and/or PFOS.

114.   Downey was, is, and will be harmed.

115.   Defendants' failure to warn or instruct was a substantial factor in causing Downey's harm.

116.   As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has suffered, and continues to suffer, monetary damages to be proven at trial, all of which are set forth and prayed for herein below.

## SEVENTH CAUSE OF ACTION
## NEGLIGENCE- FAILURE TO RECALL

117.   Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

118.   Defendants' products containing PFAS including but not limited to PFOA and/or PFOS were designed, manufactured, sold, and distributed without adequate warning of toxicity, potential human health risks, and environmental hazards.

28

119.    Defendants were negligent by not using reasonable care to warn or instruct about the risks associated with products containing PFAS including but not limited to PFOA and/or PFOS.

120.    Defendants knew or reasonably should have known that their products containing PFAS including but not limited to PFOA and/or PFOS were dangerous or likely to be dangerous when used or misused in a reasonably foreseeable manner.

121.    Defendants knew or reasonably should have known that users and third parties would not realize the danger.

122.    Defendants became aware of the human health risks and environmental dangers presented by products containing PFAS including but not limited to PFOA and/or PFOS by no later than the year 2000.

123.    Defendants failed to recall products containing PFAS including but not limited to PFOA and/or PFOS.

124.    A reasonable designer, manufacturer, distributor, or seller under the same or similar circumstances would have recalled products containing PFAS including but not limited to PFOA and/or PFOS.

125.    Downey was, is, and will be harmed.

126.    Defendants' failure to recall the product was a substantial factor in causing Downey's harm.

127.    Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

128.    Defendants, their officers, directors, and managing agents, engaged in despicable conduct, and acted or failed to act with malice, oppression, and fraud, warranting punitive or exemplary damages.

129.    As a direct and proximate result of Defendants' actions and/or inactions,

Plaintiff has suffered, and continues to suffer, monetary damages to be proven at trial, all of which are set forth and prayed for herein below.

## EIGHTH CAUSE OF ACTION

### TRESPASS

130.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

131.    Downey owns and operates drinking water production wells that draw from groundwater aquifers and associated pumping, storage, and distribution facilities and equipment. Downey has significant property interests in the waters it appropriates and uses and also has significant property interests in the groundwaters that supply the Downey Wells.

132.    Defendants intentionally, recklessly, and negligently caused PFOA and/or PFOS to enter into the groundwaters, aquifers, and drinking water production wells operated by Downey.

133.    Downey did not give permission for the entry.

134.    Downey was, is, and will be actually harmed by the entry of PFAS including but not limited to PFOA and/or PFOS onto its property.

135.    Defendants' conduct was a substantial factor in causing Downey's harm.

136.    Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

137.    Defendants, their officers, directors, and managing agents, engaged in despicable conduct, and acted or failed to act with malice, oppression, and fraud, warranting punitive or exemplary damages.

138.    As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has suffered, and continues to suffer, monetary damages to be proven at trial, all of which are set forth and prayed for herein below.

30

## NINTH CAUSE OF ACTION

## CIVIL CONSPIRACY

139.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

140.    At all times relevant to this lawsuit, Defendants actually knew of the hazards that PFAS including but not limited to PFOA and/or PFOS posed to the environment, including Plaintiff's Property.

141.    Beginning in the 1960s and continuing through the date of the filing of this Complaint, Defendants agreed to engage in unlawful and wrongful acts that caused damage to the Plaintiff.  Each Defendant performed at least one overt act in furtherance of this conspiracy. Specifically, Defendants colluded for the avowed purpose of providing information about AFFF products containing PFOA and/or PFOS to the public and the government, with the true, unlawful purpose of:

a.    intentionally misrepresenting to the EPA and the public that AFFF containing PFOA and/or PFOS was safe and did not pose a risk to human health and the environment;

b.    concealing the dangers of AFFF containing PFOA and/or PFOS, including the products' characteristics and their propensity to contaminate soil and groundwater, from the government and public by, among other means, repeatedly misrepresenting how products containing PFAS including but not limited to PFOA and/or PFOS were being disposed of;

c.    concealing the dangers of PFAS including but not limited to PFOA and/or PFOS from consumers and the public; and

d.    using their considerable resources to fight legislation concerning PFAS including but not limited to PFOA and PFOS.

31

142.     As a direct and proximate result of Defendants' conspiracy, Defendants' AFFF products at all times relevant to this litigation have:

     a.     posed and continue to pose a threat to Plaintiff's Property;

     b.     caused and will continue to cause adverse impacts to Plaintiff's Property;

     c.     caused and will continue to cause adverse impacts to the soil, surface, and groundwater on and within the vicinity of Plaintiff's Property;

     d.     required and will continue to require testing and monitoring of Plaintiff's Property for the presence of PFOA and/or PFOS;

     e.     required or will require remediation of PFOA and/or PFOS or, where remediation is impracticable or insufficient for Plaintiff, removal and disposal of the PFOS and/or PFOA;

     f.     diminished Plaintiff's confidence in, and the use and enjoyment of, Plaintiff's Property;

     g.     diminished Plaintiff's Property value due to actual, impending, and/or threatened PFOA and/or PFOS impacts; and

     h.     caused and/or will cause Plaintiff to sustain substantially increased damages and expenses resulting from the loss of the safety, use, benefit and/or enjoyment of its property.

## TENTH CAUSE OF ACTION

## VIOLATION OF THE UNIFORM VOIDABLE TRANSFER ACT

143.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

144.     Plaintiff seeks equitable and other relief pursuant to the Uniform Voidable Transfer Act ("UVTA") as adopted by the State of California in Cal. Civ. Code Ann. § 3439, against E. I. Dupont de Nemours and Company, The Chemours Company, The Chemours

Company FC LLC, Corteva, Inc., and DuPont De Nemours, Inc. (collectively, the "UVTA Defendants").

145.    Pursuant to Cal. Civ. Code Ann. § 3439, "[a] transfer made or an obligation incurred by a debtor is voidable as to a creditor, whether the claim of the creditor arose before, or within a reasonable time not to exceed four years after, the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

      a.   With actual intent to hinder, delay, or defraud any creditor of the debtor;

      b.   Without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor either:

           i.   Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

          ii.   Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."

146.    Further, Cal. Civ. Code Ann. § 3439 states that, "[i]n determining the actual intent under paragraph (1) of subdivision (a), consideration may be given, among other factors, to any and all of the following: to all relevant factors including, but not limited to, the following: [...] whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit, whether the transfer was of substantially all of the debtor's assets; [...] whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred."

147.    Upon information and belief, in February 2014, E. I. DuPont de Nemours and Company formed The Chemours Company as a wholly owned subsidiary and used it to spin off DuPont's "Performance Chemicals" business line in July 2015.

COMPLAINT FOR DAMAGES AND OTHER RELIEF

148.   Upon information and belief, at the time of the spinoff, DuPont's Performance Chemicals division contained the AFFF and/or PFOA and/or PFOS business segments.  In addition to the transfer of the Performance Chemicals division, The Chemours Company accepted broad assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFOA and/or PFOS.

149.   Upon information and belief, at the time of the transfer of its Performance Chemicals business to The Chemours Company, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacture and sale of PFOA and/or PFOS and products that contain PFOA and/or PFOS.

150.   Upon information and belief, as a result of the transfer of assets and liabilities described in this Complaint, DuPont limited the availability of assets to cover judgements for all of the liability for damages and injuries from the manufacture and sale of PFOA and/or PFOS and products that contain PFOA and/or PFOS.

151.   The UVTA Defendants acted with actual intent to hinder, delay, and defraud any creditor of the UVTA Defendants because: (1) they were engaged or about to engage in a business for which the remaining assets of Chemours were unreasonably small in relation to the business; and (2) intended to incur, or believed or reasonably should have believed that the Chemours Company would incur, debts beyond its ability to pay as they became due.

152.   The UVTA Defendants engaged in acts in furtherance of a scheme to transfer E. I. DuPont de Nemours and Company's assets out of the reach of parties, such as the Plaintiff, that have been damaged as a result of UVTA Defendants' conduct, omissions, and actions as described in this Complaint.

153.   As a result of the transfer of assets and liabilities described in this Complaint, the UVTA Defendants have attempted to limit the availability of assets to cover judgments for all of

34

COMPLAINT FOR DAMAGES AND OTHER RELIEF

the liability for damages and injuries from the manufacturing, marketing, distribution and/or sale of PFOA and/or PFOS and products that contain PFOA and/or PFOS.

154.    Pursuant to Cal. Civ. Code Ann. § 3439.07, Plaintiff seeks to avoid the transfer of E. I. DuPont de Nemours and Company's liabilities for the claims brought in this Complaint and to hold the UVTA Defendants liable for any damages or other remedies that may be awarded by this Court or a jury under this Complaint.

155.    Plaintiff further seeks all other rights and remedies that may be available to it under UVTA, including prejudgment remedies as available under applicable law, as may be necessary to fully compensate Plaintiff for the damages and injuries it has suffered as alleged in this Complaint.

## ELEVENTH CAUSE OF ACTION

## LIABILITY PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1882

156.    Plaintiff reaffirms all allegations set forth in the preceding paragraphs.

157.    Plaintiff is a public water utility company and operates a public water supply system in California. The groundwater that supplies Plaintiff's wells is property owned or used by Plaintiff to provide utility services. The water pumped from Plaintiff's wells is property owned or used by Plaintiff to provide utility services.

158.    California Civil Code Section 1882.1 statues, "[a] utility may bring a civil action for damages against any person who commits, authorizes, solicits, aids, abets, or attempts any of the following acts:

> c.   Diverts, or causes to be diverted, utility services by any means whatsoever.
>
> d.   Makes, or causes to be made, any connection or reconnection with property owned or used by the utility to provide utility services without the authorization or consent of the utility.

35

> e. Prevents any utility meter, or other device used in determining the charge for utility services, from accurately performing its measuring function by tampering or by any other means.
>
> f. Tampers with any property owned or used by the utility to provide utility services.
>
> g. Uses or receives the direct benefit of all, or a portion, of the utility service with knowledge of, or reason to believe that the diversion, tampering, or unauthorized connection existed at the time of the use, or that the use or receipt, was without the authorization or consent of the utility."

159. By causing and/or contributing to and/or allowing PFOA and/or PFOS to be introduced into Plaintiff's wells and the groundwater that supplies those wells, Defendants injured, altered, interfered with, and/or otherwise prevented property owned or used by Plaintiff from performing its normal or customary function in Plaintiff's provision of utility services.

160. As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, and will continue to incur, costs and damages related to the impacts of its wells caused by PFOA and/or PFOS , including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, and/or disposal of the chemicals , operating, maintenance and consulting costs, legal fees, punitive damages, diminution of property value, and all other equitable and applicable damages.

161. "In any civil action brought pursuant to Section 1882.1, the utility may recover as damages three times the amount of actual damages, if any, plus the cost of the suit and reasonable attorney's fees." California Civil Code Section 1882.2.

## PUNITIVE DAMAGES

162. Under the applicable laws of the State of California, Plaintiff seeks Punitive damages due to the wanton and willful acts and/or omissions of Defendants as set forth and alleged throughout this Complaint.

36

**PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1.    Compensatory damages according to proof including, but not limited to:

          a.    costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of the impacts of PFAS, including but not limited to PFOA and/or PFOS and their pre-cursors from products including but not limited to AFFF on and within Plaintiff's Property;

          b.    costs and expenses related to the past, present, and future treatment and remediation of PFAS including but not limited to PFOA and/or PFOS and their pre-cursors on Plaintiff's Property or, in the alternative, the costs and expenses associated with and related to the removal and disposal of the PFAS including but not limited to PFOA and/or PFOS and their pre-cursors; and

          c.    costs and expenses related to the past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFAS including but not limited to PFOA and/or PFOS and their pre-cursors on and within Plaintiff's Property.

2.    Punitive damages;

3.    Consequential damages;

4.    Costs, disbursements, and attorneys' fees of this lawsuit;

5.    Pre-judgment and post-judgment interest; and

6.    Any other and further relief as the Court deems just, proper, and equitable.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial.

COMPLAINT FOR DAMAGES AND OTHER RELIEF

Dated: January 27, 2021

Respectfully Submitted,

*Celeste A. Evangelisti*

John P. Fiske (CA Bar No. 249256)
Baron & Budd, P.C.
11440 West Bernardo Court, Suite 265
San Diego, CA  92127
Telephone:  (858) 251-7424

Celeste Evangelisti (CA Bar No. 225232)
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219-4281
Telephone:  (214) 521-3605

COMPLAINT FOR DAMAGES AND OTHER RELIEF

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Celeste Evangelisti (CA Bar No. 225232)<br>Baron & Budd, P.C.<br>3102 Oak Lawn Ave., Ste. 1100, Dallas, TX 75219<br><br>TELEPHONE NO.: 214-521-3605     FAX NO. *(Optional)*:<br>ATTORNEY FOR *(Name)*: Plaintiff City of Downey | **CONFORMED COPY<br>ORIGINAL FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>**JAN 27 2021**<br><br>Sherri R. Carter, Executive Officer/Clerk of Court<br><br>By: Tanya Herrera, Deputy |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES |
|---|
| STREET ADDRESS: 312 N. Spring Street |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: Los Angeles, CA 90012 |
| BRANCH NAME: Stanley Mosk Courthouse |

| CASE NAME:<br>City of Downey v. 3M Company; et al. | |
|---|---|

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| [X] **Unlimited** (Amount demanded exceeds $25,000)   [ ] **Limited** (Amount demanded is $25,000) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **21STCV03250**<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [X] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [X] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [X] Large number of separately represented parties   d. [X] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [X] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [X] punitive
4. Number of causes of action *(specify)*: eleven (11)
5. This case [ ] is   [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: January 27, 2021

Celeste Evangelisti

_____ ▶ _____
(TYPE OR PRINT NAME)      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

| SHORT TITLE: City of Downey v. 3M Company; et al. | CASE NUMBER 21STCV03250 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br>1, 4, 11<br>1, 4, 11 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: City of Downey v. 3M Company; et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

SHORT TITLE: City of Downey v. 3M Company; et al.            CASE NUMBER

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|

**Judicial Review**

| | | |
|---|---|---|
| Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |

**Provisionally Complex Litigation**

| | | |
|---|---|---|
| Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| Toxic Tort Environmental (30) | ☑ A6036  Toxic Tort/Environmental | 1, ②, 3, 8 |
| Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |

**Enforcement of Judgment**

| | | |
|---|---|---|
| Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | ☐ A6160  Abstract of Judgment | 2, 6 |
| | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |

**Miscellaneous Civil Complaints**

| | | |
|---|---|---|
| RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |

**Miscellaneous Civil Petitions**

| | | |
|---|---|---|
| Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment With Damages | 2, 3, 9 |
| | ☐ A6123  Workplace Harassment With Damages | 2, 3, 9 |
| | ☐ A6124  Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | ☐ A6190  Election Contest | 2 |
| | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | ☐ A6100  Other Civil Petition | 2, 9 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

| SHORT TITLE: City of Downey v. 3M Company; et al. | CASE NUMBER |
|---|---|

**Step 4:** **Statement of Reason and Address**: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected.  Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: <br><br> 1. ✓2.  3.  4.  5.  6.  7.  8.  9.  10.  11. | ADDRESS: <br> N/A, Toxic Tort/Environmental COMPLEX CASE |
|---|---|
| CITY: | STATE: | ZIP CODE: |

**Step 5:** **Certification of Assignment:** I certify that this case is properly filed in the ___Central Judicial___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: January 27, 2021

_Celeste A. Evangelisti_

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3

Page 4 of 4